**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MIN HUI LIN**<br>*Plaintiff*<br>**v.**<br><br>**LEE'S HOUSE RESTAURANT, INC., SEN LIN, BAIQUN LIN**<br>*Defendants.* | **CIVIL ACTION**<br><br>**NO. 23-3111** |

**MEMORANDUM RE: MOTION FOR LIQUIDATED DAMAGES, FEES, AND COSTS**

**Baylson, J.** **September 28, 2026**

## I. INTRODUCTION

Before the Court is Plaintiff's Motion to Alter or Amend Judgment and for Attorneys' Fees and Costs. ECF 184 ("Mot."). The matter has been fully briefed,[1] and for the reasons stated herein, the Motion is **GRANTED** in part, in that Plaintiff is awarded an additional $2,800.00 in liquidated damages, $9,952.11 in counsel fees, and $4,769.41 in costs from Defendants Sen Lin and Lee's House Restaurant, Inc., joint and several.

## II. BACKGROUND AND PROCEDURAL HISTORY

This case was tried to a jury after extensive pretrial proceedings resulting in a verdict in favor of Plaintiff for $2,800.00 of unpaid overtime wages under the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PAMWA) against individual defendant Sen Lin. ECF 182. A default was entered against the corporate defendant, Lee's House Restaurant,

[1] Defendant Sen Lin filed a Response in Opposition to Plaintiff's Motion to Alter Judgment to Include Liquidated Damages. ECF 188. Defendant Sen Lin also filed a separate Response in Opposition to Plaintiff's Motion for Fees and Costs. ECF 189. Plaintiff filed a Reply Brief to both. ECF 190. On July 1, 2026, the Court ordered the parties to submit supplemental briefing on the issue of the hourly rates requested by Plaintiff. ECF 195. Plaintiff submitted a supplemental brief, ECF 196, and Defendant Sen Lin responded, ECF 198. On August 17, 2026, the Court ordered Plaintiff to file affidavits or sworn declarations from other wage-and-hour attorneys in the Philadelphia community to support their requested hourly rates. Plaintiff submitted affidavits on August 31, 2026. ECF 199.

Inc., before trial due to its failure to retain counsel for trial.[2] ECF 171. Thus, the corporate defendant is jointly and severally liable for the $2,800 judgment awarded by the jury, and any subsequent award of liquidated damages, attorneys' fees, and costs. ECF 182. The jury awarded a verdict in favor of the other individual defendant, Baiqun Lin. Id.

## III. DISCUSSION

### A. Plaintiff's Motion for Liquidated Damages

Plaintiff moves for the judgment to be altered to add $2,800.00 in liquidated damages. Mot. at 1. The FLSA provides for mandatory liquidated damages in an amount equal to the unpaid overtime compensation award unless the employer shows that (1) it acted in good faith, and (2) that it had reasonable grounds for believing that it was not in violation of the Act. 29 U.S.C. §§ 216(b), 260. The good faith requirement requires that employer come forward with "plain and substantial" evidence to prove that it subjectively had "an honest intention to ascertain and follow the dictates of the Act." Sec'y United States Dep't of Lab. v. Am. Future Sys., Inc., 873 F.3d 420, 433 (3d Cir. 2017) (quoting Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907–908 (3d Cir. 1991)). In their Response, Defendants have not brought forth any evidence of good faith or reasonable grounds. ECF 188. In fact, Defendant Sen Lin admitted in his testimony at trial that he did not pay Plaintiff time-and-a-half for overtime hours worked.[3] Thus, Plaintiff's motion for liquidated damages is granted.

### B. Plaintiff's Motion for Attorneys' Fees

[2] Although Plaintiff could have sought a default judgment against the corporate defendant, Plaintiff failed to seek any such relief, probably because the record shows that the Chinese restaurant operated by the corporate defendant has been closed.

[3] Defendants admit in their Response that their own overtime chart presented at trial showed that "any overtime issue was limited and disputed, and that in some weeks the disputed overtime amounted to only a small number of hours." ECF 188. Based on Defendants' own presentation of evidence, Plaintiff worked some amount of overtime hours and was not compensated for those hours at the time-and-a-half rate required by law. Defendants' argument that this evidence reflects an honest intention to ascertain and follow the dictates of the FLSA is unavailing.

Plaintiff seeks $110,935.83 in attorneys' fees. Mot. ¶ 81. In addition to the judgment and liquidated damages, successful Plaintiffs in FLSA actions shall be paid a "reasonable attorney's fee" by the defendant, and costs of the action. 29 U.S.C. § 216(b). The reasonable attorneys' fee is determined by calculating the "lodestar amount," which is the number of hours reasonably worked multiplied by a reasonable hourly rate. Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 177 (3d Cir. 2001). After calculating the lodestar, a court may adjust it downward if the lodestar "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Souryavong v. Lackawanna Cnty., 872 F.3d 122, 128 (3d Cir. 2017) (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010)). Factors to be considered include:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 719 (5th Cir. 1974). "The most critical factor is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

Defendant's Rule 68 offers are also relevant to the Court's assessment of attorneys' fees. Souryavong v. Lackawanna Cnty., 159 F. Supp. 3d 514, 520–21 (M.D. Pa. 2016), aff'd, 872 F.3d 122 (3d Cir. 2017).

**a. Reasonable Hourly Rate**

Plaintiff requests the following hourly rates for hours billed by attorneys and staff members at Troy Law, PLLC for work on this case: $300 per hour and a half-rate of $150 per hour for staff-level work for attorney Tiffany Troy; $850 per hour and a half-rate of $400 per hour for staff-level work for attorney John Troy; $400 per hour and half-rate of $200 per hour for staff-level work for attorney Aaron Schweitzer; $200 per hour for clerk Preethi Kilaru; $150 per hour for clerk Gavin Dass; $200 per hour for clerk Frances Sayson; and $200 per hour for clerk Camila Peñaloza Traslaviña. Mot. ¶ 81.

In the Third Circuit, courts apply a burden-shifting analysis when determining a reasonable hourly rate, which is calculated "according to the prevailing market rates in the community." Smith v. Phila. Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997) (quoting Washington v. Philadelphia Cnty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996)). The party seeking attorney's fees bears the burden of producing sufficient evidence of what constitutes a reasonable market rate, which is established "with reference to the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." Carey v. City of Wilkes–Barre, 496 F. App'x 234, 236 (3d Cir. 2012) (quotations omitted). To establish a prima facie case, plaintiffs must produce "satisfactory evidence, in addition to the attorney's own affidavits." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 708 (3d Cir. 2005), as amended (Nov. 10, 2005). An attorney's usual billing rate is not dispositive. Maldonado v. Houstoun, 256 F.3d 181, 185 (3d Cir. 2001). When evaluating a reasonable hourly rate, the Court may also consider

the relative simplicity of the case, the quality of counsel's moving papers, and counsel's skill and experience during trial. Holmes v. Am. HomePatient, Inc., 2025 WL 321829, at *4 (M.D. Pa. Jan. 28, 2025), aff'd sub nom. Holmes v. Am. HomePatient, Inc., 2026 WL 2532295 (3d Cir. Aug. 27, 2026) (citations omitted)

If Plaintiff carries this initial burden, the court lacks discretion to depart from the requested rate absent record evidence from the opposing party. Smith, 107 F.3d at 225. However, the limitation on the Court's discretion to reduce a requested hourly rate "comes into effect only *after* the Court concludes the prevailing party has met its initial burden." Holmes, 2025 WL 321829, at *3. The Court has an independent obligation to ensure that the fee award is reasonable. Id. To accept Plaintiff's requested hourly rates solely because Defendants failed to object to them, could result in "rubberstamped fee petitions where, for whatever reason, inadequately supported aspects of the petition are not challenged." Id. "Otherwise, for example, there would be no reason for courts to independently review fee petitions in default judgment cases."[4] Id. If a party fails to meet this burden, "the district court must exercise its discretion in fixing a reasonable hourly rate." Washington, 89 F.3d at 1036.

[4] The Court notes that the corporate defendant is in default due to lack of counsel and individual defendant Sen Lin opposed the Motion for attorneys' fees pro se.

In support of his requested hourly rates, Plaintiff submitted a declaration of Tiffany Troy which outlines the professional qualifications, experience, and a selective sampling [5] [6] [7] of prior rates awarded to attorneys and staff at Troy Law, none of which were litigated in the Philadelphia area. ECF 184-1. Even if these suggested rates were representative of rates typically awarded to Troy Law, which they are not, prior rates are not dispositive. Further, Plaintiff failed to provide satisfactory evidence beyond Ms. Troy's affidavit. Plaintiff's only other evidence was the fee schedule rates established by Community Legal Services, Inc., ECF 184-2, which the Third Circuit has accepted as a fair reflection of the prevailing market rates in Philadelphia. Maldonado, 256 F.3d at 187.

**i. Plaintiff's Supplemental Affirmations**

To address Plaintiff's evidentiary shortcomings, on August 17, 2026, the Court ordered that Plaintiff file "affidavits or sworn declarations from other wage-and-hour attorneys practicing in the Philadelphia community to support their requested hourly rates." ECF 198. On August 31,

[5] Plaintiff cites four cases in which Tiffany Troy was awarded an hourly rate of $250 per hour. Tiffany Troy is the attorney of record in 142 cases. Plaintiff requests $300 per hour in this case. Two of the cases cited at $250 per hour were oral rulings in state court that this Court is not able to properly assess. Troy Law was awarded its full attorneys' fee request in JD Produce in a default judgment order that has since been vacated upon reconsideration. Upon reconsideration, the court noted that defendants raised "potentially meritorious arguments about the amount of the judgment, particularly as it concerns the award of attorneys' fees." Troy Law was awarded its full fee request in Lemonleaf on an unopposed motion for default judgment, and the opinion did not reference other cases involving fee petitions of Troy Law.

[6] Plaintiff cites two cases, JD Produce and Lemonleaf, in which John Troy was awarded an hourly rate of $650 per hour. John Troy is the attorney of record in 879 cases. Plaintiff requests $850 per hour in this case. As noted above, Troy Law was awarded its full fee request in JD Produce and Lemonloaf on default judgment motions, one of which has been vacated.

[7] Plaintiff cites six cases in which Aaron Schweitzer was awarded an hourly rate of $400 per hour. Aaron Schweitzer is the attorney of record in 303 cases. Plaintiff requests $400 per hour in this case. Three of the cases cited at $400 were oral rulings that cannot be properly assessed. As noted above, Troy Law was awarded its full fee request on a motion for default judgment in Lemonloaf. In Jling, Schweitzer was awarded $400 per hour after success at trial in securing $148,699.85 in damages for their clients. In Feng v. Kelai, the Court awarded $400 because the "quality of his work and command of the facts generally was very good." 18-12329 SDNY. Jling and Kelai are distinguishable because Mr. Schweitzer did not secure a significant degree of success for his client at trial and the quality of trial presentation was lacking.

2026, Plaintiff submitted affirmations in support from the following three attorneys: Scott M. Pollins, Michael A. Filoromo, III, and Jonathan Bernstein. ECF 199.

The affirmations of Messrs. Pollins, Filoromo, III, and Bernstein are cursory. None identify themselves as wage-and-hour attorneys,[8] nor do they describe their experience litigating cases of this nature in the Philadelphia community. None indicate how long they have practiced as wage-and-hour attorneys,[9] nor do they provide their typical hourly rate. While Messrs. Bernstein and Pollins affirm some degree of familiarity with the attorneys in this case, Mr. Filoromo, III is silent on this point. Although all three recommend the Court to adopt Plaintiff's rates, none affirm that they have reviewed counsel's performance, or any element of this case.

Each affirmation includes a nearly-identical recitation of the CLS fee schedule rates and conclusorily states that the fees requested are in conformity. In conclusion, each affirmation includes the same boilerplate language that the affiant is "aware of numerous reported cases" in which similar fees have been awarded—without any citation or explanation.

Plaintiff's conclusory affirmations fail to carry their burden. Instead, they reiterate the CLS fee schedule rates—which have already been presented by Plaintiff—without demonstrating that the CLS fee schedule is representative of a reasonable market rate for the character and complexity of the legal services rendered *in this case*. Indeed, none of the affiants profess to have reviewed the file or the litigation, nor do they even refer in general terms to the work performed by counsel. Nor do the conclusory affirmations identify any factor or complexity which merits compensating counsel at the high end of the CLS fee schedule for this otherwise

---

[8] Based on Google research, Messrs. Pollins and Bernstein appear to fit that classification. By contrast, Mr. Filoromo, III is a *New York-based* partner handling whistleblower, discrimination, and retaliation claims.

[9] The affirmations of Messrs. Pollins and Filoromo, III fail to state how long they have been practicing *generally*, let alone in the Philadelphia community performing similar work. Although Mr. Bernstein affirms he has been practicing in Philadelphia for the last ten years, he says nothing of the nature of that work.

ordinary case. See Loughner, 260 F.3d at 179 n.5 ("[W]e believe, that in general, a wage and overtime case is an uncomplicated cause of action.").

The affirmations likewise fail to situate the requested rates in comparison to "the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado, 256 F.3d at 184. Instead, each affirmation vaguely asserts that the affiant is "aware of numerous reported cases" in which similar rates were awarded to attorneys of similar experience, training, and professional standing. ECF 199-1 at 2; ECF 199-2 at 2; ECF 199-3 at 3. But none provide a citation or single detail regarding any of the purported cases nor do they bother to affirm that they are substantively similar. Thus, the Court is unable to determine whether they are even wage-and-hour cases, let alone wage-and-hour cases of similar complexity involving lawyers of reasonably comparable skill, experience, and reputation. Wang v. Chapei LLC, No. 15-2950, 2020 WL 5500428, at *4 (D.N.J. Sept. 10, 2020), aff'd, 849 F. App'x 360 (3d Cir. 2021) (citing cases "where the requested rates were awarded, without any discussion of the similarities in the cases or the type and quality of work performed, fails to establish the prevailing market rate").

Despite these defects, each affiant urges the Court to adopt the requested rate because it is "reasonable." But a conclusory statement attesting to each affiant's belief that the requested rates are "reasonable" is not sufficient to satisfy counsel's burden. See Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621, 630 (E.D. Pa. 1998) ("Conclusory statements, devoid of factual underpinnings, no matter how distinguished the pedigree of the affiant, are insufficient to satisfy the applicant's burden to show that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.") (quotations omitted). The issue is not whether the affiants believe the hourly rates

requested by counsel are "reasonable." Instead, the question is whether the hourly rate requested reflects the "community market rate attorneys of comparable skill, experience and reputation are paid by actual clients for providing services in cases of similar complexity." Id. (quotations omitted). The affirmations fail to resolve this question.[10]

**ii. Plaintiff Fails to Carry His Burden**

Because Plaintiff has failed to carry its burden, the Court must use its discretion to determine a reasonable hourly rate. Washington, 89 F.3d at 1036.

Plaintiff seeks hourly rates at the high end of the CLS fee schedule for the three attorneys who participated in this case: Tiffany Troy, John Troy, and Aaron Schweitzer. However, Plaintiff

---

[10] An evidentiary hearing is not required. The Third Circuit has held that when hourly rates are contested, the district court must conduct a hearing to calculate reasonably hourly rates. Coleman v. Kaye, 87 F.3d 1491, 1510 (3d Cir. 1996); Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001). However, the Third Circuit has also held that a "hearing must be held only where the court cannot fairly decide disputed questions of fact without it." Blum v. Witco Chem. Corp., 829 F.2d 367, 377 (3d Cir. 1987) ("Many fee applications are decided on the basis of affidavits without the need for a hearing."). In Blum, the Third Circuit warned that "the inquiry into the proper fee should not assume massive proportions dwarfing the case in chief." Id. (quotations omitted). The Third Circuit resolved this apparent conflict over when an evidentiary hearing is required in favor of Blum in Drelles v. Metro. Life Ins. Co.:

> "Behrend observes that recent Third Circuit caselaw holds that an evidentiary hearing is required when the reasonable hourly rate for fees is disputed, and that failure to hold such a hearing is reversible error. A prior case from the Third Circuit, however, holds that failure to conduct an evidentiary hearing is not reversible error. A hearing must be held only where the court cannot fairly decide disputed questions of fact without it. It is well established that in a conflict between decisions of different panels, the oldest one controls. Thus, the District Court's failure to hold a hearing is not automatically reversible error, but rather must be evaluated under Blum."

90 F. App'x 587, 591 (3d Cir. 2004) (internal quotations and citations omitted).

A hearing is not required where, as here, Defendants have merely contested the hourly rate as excessive without submitting evidence. See Tenafly Eruv Ass'n v. Borough of Tenafly, 195 F. App'x 93, 97 n.4 (3d Cir. 2006) ("hearing is not merited" where challenger has "merely [] contest[ed] the claimed hourly rate" without submitting "evidence of a different reasonable hourly rate"). Because Defendants have not disputed Plaintiff's hourly rates with appropriate record evidence, there are no disputed questions of fact requiring an evidentiary hearing. Therefore, the Court may decide Plaintiff's reasonable hourly rate "on the basis of affidavits without the need for a hearing." Blum, 829 F.2d at 377; Sixth Angel Shepherd Rescue, Inc. v. Bengal, No. 10-1733, 2013 WL 5309269, at *6 n.3 (E.D. Pa. Sept. 23, 2013), aff'd, 620 F. App'x 146 (3d Cir. 2015) (reducing "requested rate based on personal knowledge of [counsel's] performance" without an evidentiary hearing because a "hearing is not necessary to help the Court decide a reasonable rate in this case"); G.J. ex rel. Jackson v. Lower Merion Sch. Dist., No. 11-3723, 2012 WL 2327780, at *6 (E.D. Pa. June 19, 2012) (evidentiary hearing not required where no factual dispute); Harris v. Paige, No. 08-2126, 2013 WL 4718949, at *4 n.6 (E.D. Pa. Sept. 3, 2013) (hearing not necessary "because the Court has sufficient information to 'decide disputed questions of fact'").

has not offered evidence that Troy Law's reputation, experience, and skill as it pertains to this case is on par with its peers in the Philadelphia legal community. This case did not involve complicated facts, legal issues, or parties. Plaintiff's counsel never moved for class certification nor final collective certification, and Plaintiff's counsel dropped all minimum wage claims on the first day of trial. Notably, Ms. Troy did not even show up for trial, and Mr. Schweitzer's presentation was unpersuasive as pointed out by the Court, as well as the jury's verdict awarding a fraction of what Plaintiff was seeking in his calculations at trial. Counsel also did not come prepared with a digestible visual representation of its wage and hour evidence as previously ordered, ECF 101, resulting in the early adjournment of the first day of trial to allow time for Plaintiff's counsel to create a legible summary chart overnight. See Mantz v. Steven Singer Jewelers, 100 F. App'x 78, 81 (3d Cir. 2004) ("In assessing the reasonableness of the hourly rate asserted by [] counsel, the court properly considered . . . its perception of counsel's skill and experience during the trial of the underlying matter, as well as the quality of his moving papers."); see also Bell v. United Princeton Props., Inc., 884 F.2d 713, 719 (3d Cir. 1989) ("[A] judge may reduce requested fees with respect to matters within the judge's personal knowledge[.]").

The Court has also conducted research into Troy Law's reputation and has reviewed the "treatise worth of case law [which] has emerged about the rates and hours that Troy Law has requested. And courts have balked at the sort of rates requested. . . Courts have 'thoroughly scrutinized' such requested rates and found them 'unreasonable' given the firm's skill and experience." Garcia v. Francis Gen. Constr. Inc., 2022 WL 2698434, at *7 (S.D.N.Y. July 12, 2022).[11] This case represents another example of Troy Law, PLLC requesting inflated and excessive hourly rates given its somewhat deficient performance on behalf of their client.

[11] See also Panora v. Deenora Corp, 2021 WL 5712119, at *5 (E.D.N.Y. Dec. 2, 2021) (collecting nineteen instances of "reprimands and adverse consequences due to [Troy Law's] poor practice"); Li v. NY Capri Nails & Spa Inc., 797

Because Plaintiff has failed to meet its initial burden of establishing that its requested hourly rates are reasonable, the Court now concludes, in its discretion, that reasonable hourly rates for this case are the following: $150 per hour and a half-rate of $75 per hour for travel and staff-level work for attorney Tiffany Troy; $400 per hour and a half-rate of $200 per hour for travel and staff-level work for attorney John Troy; $200 per hour and half-rate of $100 per hour for travel and staff-level work for attorney Aaron Schweitzer; $100 per hour for clerk Preethi Kilaru; $75 per hour for clerk Gavin Dass; $100 per hour for clerk Frances Sayson; and $100 per hour for clerk Camila Peñaloza Traslaviña.[12] At these reasonable rates, Plaintiff's total billables requested are $55,289.50.

**b. Number of Hours Reasonably Expended**

Upon careful review of the record, the Court concludes that a 40% reduction to Plaintiff's

F. Supp. 3d 119, 131–132 n.6 (E.D.N.Y. 2025), appeal dismissed (Jan. 8, 2026) (collecting four more instances of courts admonishing Troy Law's billing practices since 2021, with one court making a finding of bad faith and issuing sanctions); Hong v. Mito Asian Fusion, Inc., 2023 WL 3092722, at *5 (E.D.N.Y. Apr. 26, 2023) ("Judges in this district have routinely reduced Troy Law Firm's requested hourly rates for being higher than what is commonly awarded.").

[12] Teoh v. Manhasset Rest., LLC, 2025 WL 1088045, at *5 (E.D.N.Y. Apr. 10, 2025), report and recommendation adopted, 2025 WL 1736835 (E.D.N.Y. June 23, 2025) ("While some courts may occasionally accede to Troy Law's lofty fee requests, the overwhelming majority significantly reduce Troy Law's hourly rates for the same attorneys and support staff who appear in this case. *See, e.g.*, *Shen v. ZenTao Inc.*, No. 19 CV 7269, 2025 WL 746478, at *7 (E.D.N.Y. Feb. 18, 2025), *report and recommendation adopted*, 2025 WL 746063 (Mar. 7, 2025) (reducing Mr. Troy's rate from $650.00 to $400.00, Mr. Schweitzer's rate from $400.00 to $250.00, Ms. Troy's rate from $250.00 to $150.00, Ms. Kilaru's rate from $200.00 to $100.00, and Mr. Dass's rate from $150.00 to $75.00); *Juarez v. 156-40 Grill LLC*, No. 15-CV-5081, 2024 WL 4834313, at *5 (E.D.N.Y. Nov. 20, 2024) (reducing Mr. Troy's rate from $650.00 to $400.00, Mr. Schweitzer's rate from $400.00 to $300.00, Ms. Troy's rate from $200.00 to $100.00, Ms. Kilaru's rate from $200.00 to $75.00, and Mr. Dass's rate from $150.00 to $75.00); *Cui v. D Prime Inc.*, No. 20-CV-03667, 2024 WL 3567008, at *10 (E.D.N.Y. July 29, 2024) (reducing Mr. Troy's rate from $650.00 to $350.00, Mr. Schweitzer's rate from $400.00 to $200.00 and travel rate from $200.00 to $100.00, Ms. Troy's rate from $200.00 to $100.00 and travel rate from $150.00 to $75.00, and Ms. Kilaru's rate from $200.00 to $75.00); *Hong*, 2023 WL 3092722, at *8 (reducing Mr. Troy's rate from $650.00 to $350.00, Mr. Schweitzer's rate from $400 to $200, Ms. Troy's rate from $250.00 to $150.00, and Ms. Kilaru's rate from $200.00 to $100.00). Those decisions, amongst several others, are a strong foundational reference point from which to measure the reasonableness of Troy Law's requested hourly rates in this case.").

requested hours is warranted. When calculating the lodestar, the Court may conduct either an hour-by-hour analysis or reduce the requested hours using an across-the-board cut. Am. Bd. of Internal Med. v. Von Muller, 540 F. App'x 103, 107 (3d Cir. 2013). Blanket percentage reductions "are permissible so long as the court provides a concise but clear explanation of its reasons for the fee award. Id. at 108 (explaining that "[t]his approach stays true to the fact that the essential goal in shifting fees is to do rough justice, not to achieve auditing perfection") (citations omitted). Blanket reductions are particularly appropriate in cases where the district court is "faced with hundreds of pages of billing entries and thousands of hours through which it ha[s] to wade to assess the reasonableness of the amount of time expended on the litigation." Id. Here, Plaintiff's submission totals over a hundred pages, including entries combining administrative and legal tasks and vague block billing. ECF 184-3. Therefore, the across-the-board approach is appropriate. The Court's explanation for its percentage reduction is as follows.

**1. Unsuccessful Claims and Motions**

Courts consider the amount of time plaintiff's counsel has spent on unsuccessful claims in determining the appropriate attorneys' fees award. Abrams v. Lightolier Inc., 50 F.3d 1204, 1222 (3d Cir. 1995). The removal of hours for unsuccessful claims helps to ensure that the final award of fees is reasonable in light of the benefits received by plaintiffs. Institutionalized Juvs. v. Sec'y of Pub. Welfare, 758 F.2d 897, 919 (3d Cir. 1985). The court can apply (1) a general reduction to the lodestar, (2) completely disallow hours spent on wholly unsuccessful claims, or (3) use both methods. Id. at 918–20. The Court finds it appropriate to use both methods given the little degree of success found. Here, the Court finds that the appropriate approach is to exclude time spent on Baiqun Lin's case given that Baiqun Lin ultimately prevailed at trial. ECF 104; ECF 182. Unsuccessful motions are also not counted in the award of attorney's fees. Plaintiff has billed time

for its lapsed Motion for Class Consolidation. ECF 84, ECF 104; See Elizabeth S. v. Sch. Dist. of Philadelphia, No. CIV.A. 11-1570, 2012 WL 2469547, at *4 (E.D. Pa. June 28, 2012) (deducting hours for unsuccessful motions). The Court will also deduct fees spent on the Motion for Class Consolidation.

**2. Overbilling**

Counsel should only bill adversaries for hours they would charge to their own clients. Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995). Courts in this circuit do not "condone 'the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals.'" Disciullo v. D'Amrosio Dodge, Inc., No. CIV.A.06-1775, 2008 WL 4287319, at *4 (E.D. Pa. Sept. 18, 2008); See Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983) ("A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."). Clerical, non-legal work is ordinarily considered to be part of an attorney's rate as office overhead and is not compensable as a part of attorney's fees while work that unquestionably could be completed by a paralegal is compensated at the prevailing paralegal rate. Victory v. Cnty., 452 F. Supp. 3d 185, 201 (E.D. Pa. 2020).

There are numerous instances where Troy Law has billed for the costs of clerical work, including billing for formatting, organizing documents, and travel booking. See Sheffer v. Experian Info. Sols., Inc., 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003) (declining to compensate filing and copying as they are traditionally "considered . . . part of an attorney's rate as office overhead") (citation omitted); Clemens v. New York Cent. Mut. Fire Ins. Co., 264 F. Supp. 3d 618, 635–36 (M.D. Pa. 2017), aff'd, 903 F.3d 396 (3d Cir. 2018) (finding it unreasonable to charge for "placing documents into a table of contents and organizing documents received by the law firm or filed into the docket of a case [as they] certainly do not require billing for professional service")

(citations omitted). In other instances, Troy Law has also billed attorney fees for work that could be done by paralegals and has included billing entries that mix clerical and non-clerical work. Victory, 452 F. Supp. 3d at 205 (deducting time spent copying, filing, downloading, and arranging for rental cars as it was non-compensable clerical work and reducing to paralegal rate for time spent Bates-stamping and filing the complaint); Gonzalez v. Colvin, 146 F. Supp. 3d 661, 665 (E.D. Pa. 2015) (partially reducing hours for a number of billing entries that mix non-compensable clerical tasks with compensable tasks).

Correspondingly, after a line-by-line evaluation, the court will deduct hours for mixed entries such as "Draft Mt Compel Discovery and Depo; Combine Exhibits and ECF to Court" and time entries related to setting up technology like "Set Up Zoom Links." ECF 184-3. Other egregious entries include, but are not limited to, billing attorney's fees for time spent testing out Doordash orders and formatting briefs. Id.

**3. Vagueness**

Several of Troy Law's billing entries are insufficiently specific to allow the Court to evaluate the reasonableness of such entries. Courts can reduce the award of attorney's fees "[w]here the documentation of hours is inadequate." Washington, 89 F.3d at 1037. It is "not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Id. at 1038. However, entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Clemens, 903 F.3d at 401; see also Victory, 452 F. Supp. 3d at 208 (striking entries with descriptions like "discuss next steps" and "misc. post-dep tasks and emails" where the court had a vague understanding of what the lawyers were doing for those time entries). The court finds certain entries not specific enough to assess the reasonableness of those entries.

Such entries include "prepare for conference" and "confer with client re case status" in May 2024 where it was difficult to ascertain how case status differentiated from conferrals with clients that happened before and after the dates of those entries. ECF 184-3.

**4. Unreasonableness**

The hours sought by Plaintiff must be reasonable. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Plaintiff bears the burden of establishing reasonableness as the party seeking the fees. Id. The hours are analyzed in accordance with the length and complexity of the task. Vitullo v. Borough of Yeadon, Civ. No. 04–3929, 2006 WL 1789031, at *1–3 (E.D. Pa. June 21, 2006). Courts have reduced hours where the time spent appears unreasonably disproportionate to the task at hand. See Reg'l Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Tr. v. Castellano, 164 F. Supp. 3d 705, 716 (E.D. Pa. 2016) (reducing billing for multiple entries, the most egregious of which included billing over 300 hours for a supplementary summary judgment motion leading to a charge of $800 per page).

Plaintiff billed six hours for the preparation of an affidavit in November and December of 2023 where the affidavit was only six pages long and filled with mostly simple biographical sentences listing the role, salary, age, and height of different individuals. ECF 184-3 at 1; ECF 20-3 at 1-6. The hours billed are excessive and the Court will reduce this downwards to 2 hours.

Plaintiff also billed 3.67 hours for the translation of the Notice of Pendency from English to Chinese in September 2024. ECF 184-3 at 5. "[I]nterpreting services are distinct from legal services and are not awarded as a component of attorney's fees." Szczepanek v. Dabek, No. 10-CV-2459 SJF ARL, 2011 WL 846193, at *8 (E.D.N.Y. Mar. 7, 2011), aff'd, 465 F. App'x 74 (2d Cir. 2012); see also Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 562 (2012) (limiting compensation of interpreters to cost of oral translation and not document translation). Another

district court has also barred recovery for time spent on translation by Troy Law. See Cui v. D Prime Inc., No. 20-CV-03667 (OEM) (MMH), 2024 WL 3567008, at *8 (E.D.N.Y. July 29, 2024) (removing hours spent by translations of the Notice of Pendency from English to Spanish and Korean by Troy Law). The Court will deduct the amount billed for translation.

Plaintiff also billed 4.4 hours for "back and forth communications with interpreter" in March 2024. ECF 184-3 at 19. It is unclear to the Court as to what these communications constitute, why they merited over four hours of time, and how they differed from previous billing entries referencing communications with interpreters throughout March 2024. The Court will also deduct these hours.

Applying a 40% reduction to Plaintiff's requested hours results in 235.4 as the number of hours reasonably expended. Therefore, the number of hours reasonably worked multiplied by the reasonable hourly rate is $33,173.70.

**c. Johnson Factors**

A downward deviation from the lodestar is warranted because of factors not already subsumed in the lodestar calculation. Souryavong, 872 F.3d at 128. A court "can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." Rode, 892 F.2d at 1183; see also Dee v. Borough of Dunmore, No. 3:05-CV-1342, 2013 WL 685144, at *3–4 (M.D. Pa. Feb. 25, 2013), aff'd, 548 F. App'x 58 (3d Cir. 2013) ("Once the lodestar has been determined, the court can adjust the lodestar downwards if the amount is not reasonable in light of the applicant's success—or more properly, his lack thereof—in the litigation."). "[C]ounsel fees should only be awarded to the extent that the litigant was successful." Washington, 89 F.3d at 1042 ("The amount of damages *awarded*, when compared with the amount of damages *requested*, may be one measure of how successful the plaintiff was in his or her action, and therefore may be

taken into account when awarding attorneys' fees[.]") (quotations omitted). Here, the jury awarded only $2,800, which was a fraction of the damages Plaintiff sought. Because the "most critical factor is the degree of success obtained," Hensley, 461 U.S. at 436, the Court will adjust the lodestar downward due to Plaintiff's limited success. See Am. Bd. of Internal Med., 540 F. at 107 ("[W]e are inclined to conclude that [damages] are more properly considered as an indication of a litigant's degree of success.") (citations omitted); McCutcheon v. Am.'s Servicing Co., 560 F.3d 143, 151 (3d Cir. 2009) (court "may then reduce [lodestar] to account for limited success by a plaintiff") (quotations and alterations omitted).

The Third Circuit has also held that courts may consider settlement negotiations and Rule 68 offers of judgment in awarding attorney fees, and that courts may consider the amount of a rejected settlement offer as compared to the amount ultimately awarded by the jury as an indication of the success in the litigation as a whole. Souryavong, 159 F. Supp. 3d at 540 (citing Lohman v. Duryea Borough, 574 F.3d 163, 167–69 (3d Cir. 2009). On May 2, 2025, Sen Lin served an offer of judgment[13] for $20,000 and Baiqun Lin served an offer of judgment for $12,000. ECF 189-2. Instead of accepting these offers, Plaintiff litigated this ordinary case intensely for months only to obtain a jury award of $2,800 in March of 2026. Because Troy Law would have achieved significantly greater success for Plaintiff had these offers been accepted, the Court will also consider this factor in reducing Plaintiff's request for fees.

Based on the Johnson factors, the Court finds that an additional downward departure of the lodestar is warranted, and Plaintiffs will be awarded a total of $9,952.11 in attorney fees.

[13] On April 17, 2025, Defendants also extended a settlement offer of $30,000, which Plaintiff rejected. ECF 188-4 at 4.

**C. Plaintiff's Motion for Costs**

Plaintiff is entitled to recover reasonable costs. See 29 U.S.C. § 216(b) (stating that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Plaintiff seeks to recover a total of $10,687.94. ECF 184-4.

Plaintiff may not recover costs incurred after May 2, 2025, the date when Defendants' Rule 68 Offers were made. ECF 189-2. The amount in those offers exceeds the amount obtained at judgment, respectively Defendant Sen Lin's offer of $20,000 and Defendant Baiquin Lin's offer of $12,000 compared to the jury's ultimate verdict of $2,800. ECF 182; See Souryavong, 159 F. Supp. 3d at 542 (stating that cost recovery was barred after Defendant's Rule 68 Offers were made in a FLSA case because the amount in those officers exceeded the amount ultimately obtained at judgement); Haworth v. State of Nevada, 56 F.3d 1048, 1052 (9th Cir. 1995) (vacating the district court's award of costs to the plaintiff in a FLSA case because the plaintiffs recovered less by judgment than the defendant's Rule 68 Offer); Shea v. Galaxie Lumber & Const. Co., 221 F.3d 1339, at *1 (7th Cir. 2000) (affirming refusal to award any costs that were incurred after the offer of judgment in a FLSA case). After a careful line-by-line review of the costs incurred, the court finds that the total costs incurred after the offer date to be $5,918.53, so Plaintiff's requested costs will be correspondingly deducted by this amount. ECF 184-3 at 22–24. Therefore, Plaintiff will be awarded $4,769.41 in costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion will be **GRANTED in part.** Plaintiff's Motion for Liquidated Damages in the amount of $2,800 is **GRANTED**. **Plaintiff's** Motion for

Attorneys' Fees is **GRANTED** in the amount of $9,952.11. Plaintiff's Motion for Costs is **GRANTED** in the amount of $4,769.41. An appropriate **ORDER** follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 23\23-3111 Lin v Lees House Restaurant